141 So. 22

**STEELE v. HOUGH, Sheriff, et al.**

No. 31446.

Feb. 29, 1932.

Rehearing Denied March 30, 1932.

Clifford E. Hays, of Minden, for appellant.

Watkins & Watkins, of Minden, for appellee Butler.

**ODOM, J.**

Plaintiff prosecutes this appeal from a judgment rejecting his demands for an injunction to restrain defendant from executing a certain judgment and having his (plaintiff's) property seized under a writ of fieri facias.

The facts pertinent to the issues involved are that the Bank of Webster obtained a judgment, by default, against W. H. Webb, Sr., W. H. Webb, Jr., John Y. Steele (plaintiff herein), and G. C. Butler (one of the defendants in this suit), in solido; they being indorsers on a note of Webb & Butler, Inc., a corporation, which defaulted. Butler paid the judgment and became subrogated to all the rights of the bank against his codebtors in solido. Butler then procured the issuance of a writ of fieri facias under said judgment in the name of the Bank of Webster and attempted to seize, by garnishment proceedings, funds of Steele in the hands of the People's Bank & Trust Company.

The present suit is by Steele, who seeks to enjoin Butler from executing said judgment, and the People's Bank & Trust Company from delivering to the sheriff such funds of Steele as it may have in its hands.

The pleadings are lengthy and much involved. But we find it unnecessary to set forth the allegations in detail as plaintiff has, on page 10 of his brief, set out specifically and concisely the grounds on which he contends that he is entitled to the relief asked. They are:

(1) That the Bank of Webster being nonexistent, suit 6944 (the suit in which the judgment in solido was rendered against the two Webbs, Steele, and Butler), in which it was plaintiff, became nonexistent.

(2) The judgment in 6944, being paid by Butler, a codefendant, was satisfied and further inoperative in the same proceedings.

(3) Butler, claiming only under the conventional assignment alleged, could thereunder obtain no rights against Steele.

(4) That Butler's action was premature.

(5) That Butler's petition set out no cause or right of action.

(6) That the note indorsed by Steele and the others represented a debt of the corporation of Webb, & Butler, Inc., in which the Webbs and Butler were the stockholders, and in which Steele had no interest, and that Steele was therefore an accommodation indorser to the bank.

1. We find no merit in the contention that inasmuch as the Bank of Webster, plaintiff in the suit against the Webbs, Steele, and Butler, in which judgment was rendered in its favor against them, in solido, had gone out of existence, Butler could not execute the judgment. Butler, one of the codebtors in solido, paid the judgment, and upon his doing so, he became subrogated to all the bank's rights and actions thereunder. At the time of the payment and subrogation, the bank was in existence and a going concern. The fact that it later became defunct did not affect Butler's rights under the judgment.

2. Nor do we find any merit in the second contention, to wit, that the judgment having been paid by Butler, a codefendant and a judgment debtor in solido with the Webbs and Steele, the judgment was thereby satisfied and "further inoperative." The bank of Webster obtained judgment against the two Webbs, Steele, and Butler, in solido for the full amount of the note, which they had

indorsed. The four were bound, in solido, to the bank for the payment of the judgment. Butler was bound with the others, and the Civil Code, art. 2161, expressly provides that legal subrogation takes place of right "for the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it."

In Theus v. Armistead et al., 116 La. 795, 41 So. 95, it was held, to quote the third paragraph of the syllabus written by the court:

"One of the two debtors in solido on payment of a judgment against both is subrogated to the rights of the judgment creditor against his codefendant to the extent of his part and portion of the debt, including interest and costs."

Butler had an interest in paying the judgment. If he had not done so, the bank could have seized his property.

█ 3. The answer to the third contention is that this was not a conventional but a legal subrogation. Butler, in his garnishment suit, alleged that he had an assignment of the judgment and that "by said assignment and transfer alleged, your petitioner became the owner of said judgment." But he also alleged that he "was required to and did pay said judgment to the Bank of Webster the full amount thereof with interest, costs and attorneys' fees which will be more fully shown by assignment of said judgment to him by said Bank of Webster, dated December 4, 1929." The assignment referred to reads, in part: "Received payment from G. C. Butler, one of the co-debtors, and by reason of the same and for value received, do hereby assign, transfer and deliver to him the within judgment," etc. This was not a con-

ventional assignment under article 2160 of the Code. The bank did not receive payment from a "third person," but from one of the codebtors in solido. The instrument signed by the bank merely evidenced the fact of the payment by Butler. Under the circumstances, subrogation followed as a matter of law.

█ 4, 5. Plaintiff contends that Butler's action was premature and that he had no cause or right of action to proceed against Steele under the judgment.

The basis of these contentions is that Butler did not notify Steele that he had paid the judgment, and that until such notice was given, he could not proceed with the execution.

We know of no rule or law to support this contention. Plaintiff, in his brief, cites Johnson & Co. v. Boise & Felson, 40 La. Ann. 273, 4 So. 163, 8 Am. St. Rep. 528; Bernard v. Whitney National Bank, 43 La. Ann. 51, 8 So. 702, 12 L. R. A. 302; and Belden v. Butchers' Union, 38 La. Ann. 391.

These cases have no application here. They relate to the rules prescribed in the Code, by articles 2643 and 2644, to the effect that the transferee of a debt "is only possessed, as it regards *third persons*, after notice has been given to the debtor of the transfer having taken place." (Italics ours.) This is illustrated by the following quotation from the 43d Annual case (8 So. 702, 704) cited:

"It is the settled and unbending jurisprudence of this state that the assignment of an incorporeal right vests only an inchoate title, and that until notice to the debtor the assignor's interest may be seized by his creditors."

It was held in Geisenberger v. Cotton, 116 La. 651, 40 So. 929, and in many other cases, that the assignment of a judgment has no effect *as to third persons* until notified to the debtor. Steele was not a third person, but a codebtor in solido. Therefore the rule does not apply to him.

6, 7. Plaintiff's most serious contention is that he was never primarily bound for the debt represented by the note which he indorsed; that the debt was due by Webb & Butler, Inc., a corporation in which the two Webbs and Butler owned all the stock; that the corporation had previously been indebted to the bank for $5,000 and had given its note for that amount indorsed by the Webbs and Butler personally, and that the note for $2,500 which plaintiff indorsed represented part of the old indebtedness for which the Webbs and Butler were primarily bound personally and in solido on account of their having indorsed the old note; that he indorsed the new note as an accommodation to the bank; that he was an accommodation indorser to the bank; and that he was discharged when Butler paid the debt which was merged into the judgment.

In order to arrive at a correct conclusion as to whether Steele is liable to Butler, all the facts must be considered.

The two Webbs and Butler owned all the stock in Webb & Butler, Inc., a corporation. The corporation was indebted unto the bank in the sum of $5,000 represented by one note for that amount, indorsed by the Webbs and by Butler personally. Their liability to the bank was solidary and they so understood it.

The bank demanded payment of the note, but the corporation had no ready funds. This was in March, 1926. Mr. W. H. Webb, Sr., seems to have been in active charge of the corporation. Butler testified that Mr. Webb submitted to him an inventory of the assets of the concern and asked him to continue his indorsement of the $5,000 note, and that he refused to do so, and that he went to the cashier of the bank and told him "to proceed to collect the Five Thousand ($5,000.00) dollars out of the firm of Webb & Butler." Later on, he said, Mr. Baker, cashier of the bank, told him that if he (Butler) would surrender his stock in the corporation, the Webbs would pay immediately $2,500 to the bank and execute a note of the corporation for the balance, the note to be indorsed by the Webbs, by Steele, and by Butler. Butler says that Steele was to indorse the note to secure him (Butler) that the note would be paid. Butler agreed to this arrangement, and to carry the same into effect, he and the Webbs entered into a written contract on March 1, 1927, in which it is recited that the firm of Webb & Butler owed the bank $5,000 evidenced by one note for that sum, indorsed by them, and:

"Whereas party of the first part Walter H. Webb and Walter H. Webb, Sr., are to pay immediately the sum of Twenty-five Hundred ($2,500.00) dollars on said note and execute a new note for the balance of twenty-five hundred ($2,500.00) dollars, thus reducing the liability of the party of the second part (Butler) and

"Whereas party of the second part is the owner of thirty (30) shares of the stock in said Webb & Butler, Inc.,

"Therefore, party of the first part, Walter H. Webb and Walter H. Webb, Jr., hereby

agree to pay the Bank of Webster the sum of Twenty-five Hundred ($2,500.00) dollars at once and to execute a new note for the remaining twenty-five hundred ($2,500.00) dollars on behalf of said corporation, which note is to be endorsed by parties of the first part, party of the second part and by *J. Y. Steele,* said note to be due and payable on or before February 1, 1928 and therefore

"It is mutually agreed by and between party of the first part and party of the second part that if said party of the first part, Walter H. Webb and Walter H. Webb, Jr., pay said note of twenty-five hundred ($2,500.00) dollars on or before February 1, 1928, in full, then and in that event, party of the second part, G. C. Butler, agrees to deliver to said party of the first part the above mentioned thirty (30) shares of stock in said Webb & Butler, Inc."

The intent of these parties is clear enough. Butler was to get out of the corporation, to surrender his stock therein to the Webbs, who would then own it all, and the Webbs were to pay its debts.

Steele, the plaintiff in the present suit, owned no stock in the corporation and had not theretofore been connected with any of its transactions. He was a kinsman of the Webbs and lived in the house with them. He was reputed to be well-to-do.

Butler says, and his testimony is not disputed, that he agreed to indorse the note if Steele would also indorse to secure him (Butler) that the note would be paid. Mr. Baker, cashier of the bank, said he didn't know why Butler indorsed the note as he did, nor did he know who induced Steele to indorse. Steele did not take the stand. Mr. Webb said, at page 15 of the testimony:

"Insofar as I know, what Mr. Steele knew about it was that the bank was pushing us and I was trying to satisfy the bank."

Under the circumstances, we think Steele indorsed the note to accommodate the Webbs and not the bank, that is, he was an accommodation indorser for the Webbs and not for the bank, as contended.

The bank had no reason to ask that he indorse the note, as Butler seems to have had ample means. There is nothing to indicate that the bank even intended to or did look to Steele for the payment of the note. On the contrary, it looked to Butler, on whom demand was made and who paid the debt to the bank.

Webb & Butler, Inc., as a corporation, failed after this transaction was made and surrendered in bankruptcy. The bank looked to the indorsers for the payment of the note. As between these indorsers and the bank, they were liable to it in solido, and judgment was rendered against them accordingly. But as among the indorsers themselves, the two Webbs and Steele were liable in solido to Butler. While Butler was liable in solido with the Webbs to the bank on the original debt, yet, under the contract, the debt to the bank became a debt of the Webbs; they agreed with Butler to pay it in consideration of his surrendering to them his stock. Steele lent his name to the Webbs and became their surety, not only as to the bank, but as to Butler as well. Had it not been for the indorsement of Steele on the note, Butler would have required the bank to go against the corporation for its debt. The corporation at that time was apparently solvent.

Plaintiff's theory is that he was an accommodation indorser for Butler to secure a debt

for which Butler was already bound, and that upon Butler's paying the debt, he (Steele) was released. That would be true if the facts were as contended by him.

Counsel cites the case of Bazer v. Grimmett et al., 16 La. App. 613, 135 So. 54, 57. The holding there is correct but not in point here. The court there found that Bazer was the maker of the note and that De Priest was his surety, and held that, "when the maker discharged the note, he was in effect paying his own debt, and it became extinguished in so far as De Priest was concerned; hence discharged De Priest."

Under the facts and circumstances presented, the district judge refused to restrain Butler from executing the judgment.

His ruling is correct.

Judgment affirmed.